UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHVILLE DIVISION
DOCKET NO. 1:14-CV-76-GCM

| ASHLEY DREW ABEE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 7) and Memorandum in Support (Doc. No. 7-1), both filed on October 27, 2014; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 11) and Memorandum of Law in Support (Doc. No. 12), both filed on February 25, 2015. As ordered by the Court, the parties also filed supplemental briefs that addressed the recent Fourth Circuit decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Plaintiff filed Plaintiff's Supplemental Memorandum on June 23, 2015 (Doc. No. 17) and Defendant filed Defendant's Supplemental Memorandum on June 19, 2015 (Doc. No. 16). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision which found him not disabled under the Social Security Act (the "Act").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

1

# I. BACKGROUND

In December 2012, the Plaintiff filed an application for a period of disability and disability insurance benefits with an alleged disability onset date of January 1, 2011. (Tr. 11, 154-57, 172). His claim was initially denied in February 2013 and was denied again upon reconsideration in May 2013. (Tr. 11, 69, 88, 89-92, 99-106).

The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and that hearing, at which Plaintiff was represented by counsel, was held in Charlotte, North Carolina on September 26, 2013 before ALJ Thaddeus J. Hess. (Tr. 22-55). The Plaintiff testified at the hearing, as did an impartial vocational expert ("VE"). (Tr. 47-54). At the hearing, the Plaintiff's attorney discussed amending his alleged onset date to January 27, 2013, because the Plaintiff was still employed through that date. (Tr. 46). Although the Plaintiff did not amend his alleged onset date at that time, the ALJ found that the Plaintiff had been engaged in substantial gainful activity and therefore could not have been disabled until January 27, 2013 at the earliest. (Tr. 13). On November 22, 2013, the ALJ issued an unfavorable decision that the Plaintiff was not disabled within the meaning of the Act. (Tr. 21). On January 23, 2014, the Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, rendering the ALJ's decision the Commissioner's final decision in this case. (Tr. 1-5).

Pursuant to 42 U.S.C. § 405(g), the Plaintiff has a right to review of the Commissioner's final decision, and he timely filed the present action on March 28, 2014. (Doc. No. 1). The parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

# II. DISCUSSION

## A. Factual Findings

It appearing that the ALJ's findings of fact are supported by substantial evidence, the

undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

### B. Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). District courts do not review a final decision of the Secretary *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456.

The issue before this Court, therefore, is not whether the Plaintiff is disabled, but whether the ALJ's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.     ANALYSIS

The Court has read the transcript of the Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The question before the ALJ was whether the Plaintiff was "disabled" under the Social Security Act between his alleged onset date of January 27, 2013, and the date of the ALJ's decision.[1] The Court finds that the ALJ's finding of "not disabled" is supported by substantial evidence.

The Social Security Administration ("SSA") uses a five-step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims.  If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve-month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering his RFC and vocational factors (age, education, and work experience).  If the claimant is able to adjust to other work,

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301 as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

considering his RFC and vocational factors, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If he is able to carry this burden through the fourth step, the burden shifts to the Commissioner in the fifth step to show that other work is available in the national economy which the claimant could perform. *Id.*

In the instant case, the ALJ determined at step one that the Plaintiff's employment with the military constituted substantial gainful activity, and the Plaintiff was therefore precluded from receiving disability from before January 27, 2013. (Tr. 11). The Plaintiff does not challenge this finding; therefore, this case concerns the time period starting on January 27, 2013, through the date of the ALJ's decision. (Tr. 11). At step two, the ALJ determined that Plaintiff had the severe impairments of hypertension, sleep apnea, plantar fasciitis, degenerative disc disease with spondylosis at L4 and facet anthropathy of the lumbar spine, right shoulder arthralgia, degenerative arthritis of the hips, anxiety disorder/ PTSD, and adjustment disorder. (Tr. 13-14). The ALJ found, at step three, that the Plaintiff did not meet any of the listings. (Tr. 15-16). At step four, the ALJ found that the Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he can never climb ladders, ropes, or scaffolding; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid exposure to extreme cold/heat and vibration; is limited to low-stress work with occasional decision-making and occasional changes in the work setting; and is limited to occasional interaction with the general public. (Tr. 16). At step five, the ALJ, based on testimony of the vocational expert ("VE"), concluded that, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy

that the claimant could perform such as printed circuit layout taper, a table worker, or an ink printer. (Tr. 20-21).

On appeal, the Plaintiff argues that the ALJ's interpretation of the evidence concerning the impact of the Plaintiff's anxiety and post-traumatic stress disorder was not supported by substantial evidence because the ALJ improperly rejected portions of the consultative medical examiners' opinions, improperly rejected the Veteran Administration (VA) opinion, and mischaracterized the medical records. (Doc. No. 7-1). In his supplemental brief, the Plaintiff further contends the ALJ "failed to provide a function-by-function analysis (especially failing as *Mascio*, *supra*, required [the ALJ] to consider the Plaintiff's ability to perform work-related functions on a sustained basis); failed to properly quantify the Plaintiff's vocational limitations and used the same boilerplate language attacking credibility of the Plaintiff by simple reference to the previously found residual functional capacity." (Doc. No. 17 at 1-2).

Turning to the arguments in this case, the Court has reviewed the pleadings and briefs and addresses Plaintiff's assignments of error below.

### A. Substantial Evidence Supports the ALJ's Conclusions Regarding the Plaintiff's Medical Records

The Plaintiff argued in his initial memorandum that the ALJ erred in assessing the Plaintiff's RFC by improperly assessing the consultive examiner's medical opinion, misrepresenting the medical record, and improperly rejecting a VA opinion. Again, in reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456. The Court finds that the ALJ's conclusions

regarding the Plaintiff's medical records and the ALJ's RFC assessment are supported by substantial evidence.

In the present case, the ALJ found that the Plaintiff has "the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can never climb ladders, ropes, and/or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to extreme cold/ heat and vibration; he is limited to low-stress work with occasional decision-making and occasional changes in the work setting; and he is further limited to occasional interaction with the general public." (Tr. 16). In assessing the Plaintiff's RFC, the ALJ thoroughly discussed and explained the weight he gave to the medical opinions in the record.[2] For example, Dr. Annie Jackson, the consultative physician, noted in January 2013 that "the claimant was able to lift, carry, and handle light objects, squat and rise from a squatted position with ease and rise from a seated position without assistance. Nor did he have any difficulty getting onto the exam table." (Tr. 17). The Plaintiff reported in March 2011 that he was experiencing no pain. (Tr. 18). During his psychological exam in January 2013, Dr. Bevis noted the claimant was pleasant during the interview and was able to perform the psychological examination without much difficulty. (*Id.*) The VA psychologist noted that the Plaintiff was pleasant and he told her that he was doing "fine" and the medication was helping reduce his pain. (*Id.*)

---

[2] "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the adjudicator must give it controlling weight." S.S.R. 96-8p at *7.

Although the State Agency physician found that the Plaintiff could perform work at a medium exertional level, the ALJ found that his combination of impairments limited him to sedentary work. (Id.). The ALJ explained that he "limited the claimant to low-stress work with occasional decision-making and occasional changes in the work setting . . . [with the further limitation] of only occasional interaction with the general public" because of the Plaintiff's psychological problems. (Tr. 19). The Plaintiff claims he has trouble getting dressed, getting into his car, cleaning the house, and has problems socializing. (*Id.*) However, the Court will not reweigh the Plaintiff's testimony against the medical records on appeal, and instead finds that the ALJ's conclusions are supported by substantial medical evidence. The ALJ appropriately assessed the treating sources' opinions in light of the entire record and found that there were inconsistencies between the Plaintiff's testimony and what his doctors and psychiatrists have noted. (Tr. 18-19). For example, the Plaintiff has testified that he has serious problems socializing and has trouble with very basic physical tasks; however, his doctors have found on several occasions that he is "pleasant" and does not have trouble completing physical exercises. (*Id.*) While the Plaintiff disagrees with the ALJ's conclusions regarding the severity of the his impairments, the ALJ considered the entirety of the record before arriving at his decision and the Court will not re-weigh questions of fact. (*See* Doc. No. 7-1 at 5-10). Therefore, the Court finds that the ALJ properly considered the entirety of the record and his RFC assessment is based on substantial evidence.

**B. The ALJ Conducted a Sufficient RFC Analysis and Accounted for the Plaintiff's Limitations in Concentration, Persistence, and Pace.**

In light of *Mascio*, the Plaintiff argues that the ALJ failed to perform a sufficient function by-function analysis, and further, that the ALJ failed to consider the Plaintiff's ability to perform necessary work-related functions on a sustained basis. (Doc. No. 7-1). The Court finds that the

ALJ conducted a proper RFC analysis of Plaintiff's nonexertional limitations and his limiting the Plaintiff to "sedentary work as defined as 20 CFR 404.1567(a) except: . . . he is limited to low-stress work with occasional decision-making and occasional changes in the work setting; and he is further limited to occasional interaction with the general public" was sufficient to account for his moderate limitations in concentration, persistence, and pace. (Tr. 16).

S.S.R. 96-9p requires that a claimant's nonexertional capacity be expressed in terms of work-related functions. S.S.R. 96-9p at *6. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.* Further,

> Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations . . . [however] even though 'sedentary work' represents a significantly restricted range of work, this range in itself is not so prohibitively restrictive as to negate work capability for substantial gainful activity in all individuals . . . [i]n deciding whether an individual who is limited to a partial range of sedentary work is able to make an adjustment to work other than any past relevant work, the adjudicator is required to make an individualized determination.

*Id.* at *3. The Social Security Administration's guidelines for evaluating the ability to do less than a full range of sedentary work requires that the RFC assessment "include a narrative that shows the presence and degree of any specific limitations and restrictions as well as an explanation of how the evidence in file was considered in the assessment . . . [and that] the individual's maximum remaining capacities to perform sustained work on a regular and continuing basis" be stated. *Id.* at *5. Work-related mental activities generally required by sedentary work include "the capacities for seeing, manipulation, and understanding, remembering and carrying out simple instructions." *Id.* at *3.

In the present case, the ALJ considered the opinions of several psychological examiners.

9

The ALJ gave significant weight to the opinion of Dr. April Strobel-Nuss who found that the Plaintiff would have some difficulty adapting to change, but would be able to function with a stable, low-stress work assignment and minimal social demands. (Tr. 19). The ALJ gave some weight to the consultative psychological examiner John Bevis' opinion. Dr. Bevis concluded that the Plaintiff is capable of "understanding and following simple instructions, and that he maintained adequate attention and concentration when performing repetitive tasks . . . [and that] the claimant can relate to fellow workers and supervisors, but he would have difficulty with tolerating ongoing stresses and pressures." (*Id.*) Furthermore, the ALJ specifically discussed how he further restricted the Plaintiff's RFC as a result of the psychological opinions in the record. (Tr. 18-19).

The Commissioner argues that the ALJ conducted a sufficient function-by-function analysis and, at any rate, because the ALJ based his RFC findings on the function-by-function analyses of the State agency consultant and other psychological examiners, the ALJ's RFC analysis complied with S.S.R. 96-9p. *See Lemken v. Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010) ("[T]he ALJ will have complied with the requirements of Social Security Ruling 96-8p if he bases his RFC on the state examiner's function-by-function analysis of Plaintiff's exertional limitations . . ."); *see also Onishea v. Barnhart,* 2004 WL 1588294, at *1 (5th Cir. July 16, 2004). While the parties disagree on the sufficiency of the ALJ's function-by-function analysis, the Court notes that, ultimately, *Mascio* calls for remand only where there is "contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636. For the reasons already stated, the Court finds that the ALJ's conclusions about Plaintiff's functional limitations are well analyzed in his decision and are supported by the evidence in the record.

Unlike the court in *Mascio*, this Court is not "left to guess about how the ALJ arrived at his conclusions," *id.* at 637, and finds that the ALJ adequately addressed Plaintiff's functional limitations for the purposes of this review.

Next, the Plaintiff argues that the ALJ's RFC did not adequately account for his moderate limitations in concentration, persistence, or pace.[3] (Doc. No. 12). He asserts that limiting him to sedentary work does not necessarily account for moderate limitations of concentration, persistence, or pace. (Doc. No. 12). However, the ALJ did not merely limit the Plaintiff to sedentary work; the RFC finding restricted the Plaintiff to "sedentary . . . low-stress work with occasional decision-making and occasional changes in the work-setting . . . [and with the further limitation] to occasional interaction with the general public." (Tr. 16).

In *Mascio*, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d 632, 638 (4th Cir. 2015). The court distinguished the "ability to perform simple tasks from the ability to say on task," and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The Fourth Circuit remanded the case because it found that moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.*

The instant case is distinguishable from *Mascio* because, here, the ALJ did more than limit the Plaintiff to simple, routine tasks or unskilled work; the ALJ limited him to "sedentary work . .

---

[3] The Plaintiff argues that the consultative physicians' use of the word "severe" in regard to his social impairments warrants a finding of disability. (*See* Doc. No. 17). Once again, this Court will not re-weigh the evidence or substitute its judgement for the Commissioner's in regards to factual findings. There is substantial evidence in the record—medical and otherwise—which suggests the Plaintiff's limitations are indeed moderate. For example, he attends classes four days a week, visits his grandmother regularly, attends church, and maintains a household while living alone. (Tr. 15-18).

. [in a] low-stress work environment with occasional decision-making and occasional changes in the work setting; and [further limited him] to occasional interaction with the general public." (Tr. 16). Accordingly, the ALJ's findings specifically addressed the Plaintiff's ability to stay on task as required by *Mascio*. The ALJ accounted for the Plaintiff's limitation in pace by restricting him to "sedentary work," and he accounted for his limitation in concentration and persistence by restricting him to a low-stress work environment with occasional decision-making, occasional changes in the work setting, and occasional interaction with the general public. (Tr. 16). While Dr. Jagjit Sandu found the Plaintiff could perform work at the medium level of exertion, the ALJ further limited the Plaintiff's RFC to sedentary work in light of his combination of impairments. (Tr. 16, 18). The regulations emphasize that an RFC limitation to "sedentary work" reflects that the claimant has "very severe functional limitations." *See* S.S.R. 96-9p at *3. Therefore, the ALJ sufficiently accounted for the Plaintiff's limitation in pace. Otherwise, the Court finds that the ALJ's RFC finding sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace and is not grounds for remand. *See, e.g.*, *Seamon v. Astrue*, 364 F. App'x 243, 248, 2010 WL 323515, at *4 (7th Cir. 2010) (holding that the ALJ "captured [the claimant's] moderate limitation in concentration, persistence, and pace when he included a restriction of 'no high production goals'"); *Robinson v. Comm'r of Soc. Sec.*, No. 13-cv-13124, 2014 WL 4145339, at *10 (E.D. Mich. Aug. 20, 2014) (finding that the ALJ accounted for plaintiff's moderate difficulties with concentration, persistence, or pace by limiting plaintiff's RFC to "simple, routine, and repetitive tasks and free of fast-paced production requirements"); *Schooley v. Astrue*, No. 1:09 CV 2748, 2010 WL 5283293, at *2 (N.D. Ohio Dec. 17, 2010) (a hypothetical limiting plaintiff to work not involving "high productions quotas or piece work" was consistent with a moderate limitation in concentration, persistence, or pace.).

## C. The ALJ's Credibility Assessment of the Plaintiff is not Contrary to Law and is Supported by Substantial Evidence.

The Plaintiff also argues that the ALJ's evaluation of his credibility was inadequate in his assessment that "[his] statements concerning intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 17). Upon review of the record, the Court finds that the ALJ's credibility determination followed the law and is supported by substantial evidence.

The regulations lay out a two-step process for considering a claimant's statements and symptoms regarding the limitations caused by his impairments. *See* C.F.R. §§ 404.1529, 416.929; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine that there is objective medical evidence showing the existence of a medical impairment which would reasonably be expected to produce the pain or alleged symptoms. 20 C.F.R. §§ 416.929(b), 404.1529(b). If the ALJ finds such, he must then evaluate the intensity and persistence of the claimant's pain in order to determine whether or not the alleged symptomatic limitations will factor into the RFC. *See* 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); *Craig*, 76 F.3d at 595 ("It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her work, must be evaluated.").

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "The record should include a discussion of which evidence the ALJ found credible and why" because "[i]f the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

13

Further developing this standard, the Fourth Circuit has held that the ALJ's failure to evaluate a claimant's credibility before analyzing the RFC is harmful error and requires remand except where the ALJ has done a sufficient credibility analysis elsewhere. *See Mascio v. Colvin*, 780 F.3d 632, 639-40 (4th Cir. 2015). In *Mascio*, the Fourth Circuit concluded that the case should be remanded because the ALJ credited parts of the Plaintiff's testimony while discrediting other portions with no explanation. *Id.* at 640 (remanding because "nowhere . . . [did] the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity . . . [and] the ALJ's lack of explanation requires remand.").

Turning to the instant case, the Court notes that the language used by the ALJ stating that Plaintiff's "statements concerning the intensity, persistence and limiting effects are not entirely credible for the reasons explained in the decision" is strikingly similar to the now suspect boilerplate language used in *Mascio*. (Tr. 17). However, unlike the situation in *Mascio*, the ALJ here explained why he discredited parts of the Plaintiff's testimony elsewhere in his decision, referencing objective medical evidence in the record. *See Mascio*, 780 F. 3d at 639; (Tr. 15-19, 57-58). The Court therefore finds that the ALJ's credibility determination was not improper.

In evaluating a claimant's allegations, the Commissioner investigates all relevant factors which relate to the subjective complaints, including the nature of a claimant's daily activities; prior work record; the presence or absence of functional restrictions; consistency between allegations and the medical and non-medical evidence of record; the dosage, effectiveness, and side effects of medication; and the subjective measures of credibility that are within the judgment of the ALJ. 20 C.F.R. § 404.1529; S.S.R. 96-7p. The Commissioner considers any conflicts between a claimant's

statements and the rest of the record, and a subjective complaint "need not be accepted to the extent that [it is] inconsistent with the available evidence, including objective evidence of the underlying impairment." *Craig*, 76 F. 3d at 595 (citing 20 C.F.R. § 404.1529(c)(4)).

Here, the ALJ properly considered all of the evidence of record in determining the effect of Plaintiff's alleged symptoms on his ability to work. In providing a discussion of the evidence, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 17). The ALJ considered the Plaintiff's personal testimony, his daily activities, medical source statements, and treatment records in making his determination. (Tr. 14-20, 39, 40, 45). He gave a detailed summary of Plaintiff's testimony and medical records (Tr. 13-18); analyzed Plaintiff's daily activities (Tr. 18); discussed Plaintiff's symptoms and treatment notes thereto appertaining (Tr. 17-19); discussed opinion evidence (Tr. 17-19); and noted inconsistencies between Plaintiff's allegations and the objective medical evidence of record.

During the hearing with the ALJ, the Plaintiff testified that he was taking classes four days a week to learn to work as an HVAC technician involving a physical laboratory component. (Tr. 35-6). He also visits with his grandmother regularly and is able to do household chores such as vacuuming, grocery shopping, and vacuuming so that he can live alone. (Tr. 33, 37) The ALJ noted that while the Plaintiff has been prescribed Busiprone and Sertraline for his mental health, he chose on his own to only take the medication on an "as needed basis" which the ALJ reasoned indicates that his mental health is not debilitating. (Tr. 18) Although the Plaintiff has stated that he has trouble getting into his car and getting himself dressed, the ALJ noted that Dr. Annie Jackson, the consulting physician, found that he had no problem getting onto the exam table, squatting, walking, dressing or undressing. (Tr. 18). Although the Plaintiff has testified that he has chronic back pain

which keeps him from doing anything other than watching television, he has been attending classes at community college, attending church, and visiting family and friends. (*Id*.)

As stated above, it is not the job of this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *See Craig*, 76 F. 3d at 589. Accordingly, the Court finds that substantial evidence supports the ALJ's conclusions regarding the credibility of the Plaintiff.

## IV. CONCLUSION

Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED, the Commissioner's Motion for Summary Judgment (Doc. No. 11) is GRANTED, and the decision of the Commissioner will be AFFIRMED.

Signed: September 14, 2015

Graham C. Mullen
United States District Judge